**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

REBECCA SEAL,

       Plaintiff,

v.                                     Case No. 6:20-cv-1690-WWB-DCI

TODD GENERAL and REVISION, LLC,

       Defendants.

_____/

## ORDER

THIS CAUSE is before the Court on Defendant Revision, LLC's ("**Revision**") Motion for Summary Judgment (Doc. 28), Plaintiff's Response in Opposition (Doc. 30),[1] and Revision's Reply (Doc. 36). For the reasons set forth below, Revision's Motion will be granted in part.

## I.    BACKGROUND[2]

Plaintiff, Rebecca Seal, began working for Revision in July 2016 as an account executive selling Revision's products to various dermatologists, plastic surgeons, and

---

[1] Plaintiff's Response in Opposition fails to comply with this Court's January 13, 2021 Standing Order. In the interests of justice, the Court will consider the filing.

[2] Revision argues that this Court cannot consider the deposition transcripts filed in support of Plaintiff's Response in Opposition, (Doc. Nos. 31, 32, 33), because Plaintiff failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A). (Doc. 36 at 1–2). However, to the extent that Revision is requesting relief from this Court, it was required to do so by a separately filed motion. Furthermore, Revision has not directed this Court to any legal authority for the proposition that the Court is either required or permitted to strike evidence under Rule 56(c)(1)(A). *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Lastly, having reviewed the Response in Opposition, the Court finds that it adequately complies with Rule 56(c)(1)(A). Therefore, Revision's invitation to disregard Plaintiff's evidence will be denied.

medical spas. (Doc. 28-1 at 7; Doc. 31 at 7; Doc. 33 at 109). Seal's territory covered large portions of north and central Florida, including Jacksonville, Tampa, and Orlando. (Doc. 28-1 at 51; Doc. 31 at 41; Doc. 33 at 24).

In January 2019, Revision hired Defendant Todd General as the new regional sales director for the southeast region, which included Seal's territory. (Doc. 28-1 at 50; Doc. 32 at 5–6; Doc. 33 at 30). The national sales meeting in Nashville coincided with General's start date, and Seal first met him at that meeting. (Doc. 28-1 at 50; Doc. 32 at 6; Doc. 33 at 30). Toward the end of the meeting, Seal approached General and commented that it must be difficult to follow in his predecessor's footsteps. (Doc. 33 at 31). In response, Seal testified that General said, "Yes, a little bit, but you belong to me now," and winked at her. (*Id.*). General recalls meeting Seal at the national sales meeting but does not recall this conversation. (Doc. 32 at 6–7).

Beginning in February, Seal noticed that General was calling her very frequently— sometimes several times a day—and when she commented on the frequency of his calls, General told Seal that she would find he was going to be "very needy" of her. (Doc. 33 at 31–32). During these calls, Seal says that General would ask questions about her husband and mention things about his wife, including their struggle to have children. (*Id.* at 32). Seal also testified that on one occasion, General stated that Seal and her husband's custody arrangement must be good for their sex life and stated that General and his wife did not have much of a sex life. (*Id.*). Seal stated that the frequent phone calls continued throughout her time reporting to General and that General would get frustrated when she did not respond to his calls right away. (*Id.* at 34).

The next time Seal saw General in person was at a trade show in Washington, D.C. in March 2019. (Doc. 32 at 7; Doc. 33 at 33). Seal testified that when she arrived at the hotel, General gave her a hug and placed his hands on the sides of and across her breasts as he was pulling away and commented "Hmm, doesn't this feel really warm and good?" (Doc. 33 at 33). Later, while Seal was setting up the Revision booth at the show, she was kneeling under the table. (*Id.*). General walked up and made the joke, "Don't get any ideas down there" while Seal's face was level with his genital region. (*Id.*). That night, Seal saw General in the hotel bar and General commented that she looked nice, asked who she was dressed up for, and grabbed her hand to swing her around while looking her up and down. (*Id.* at 33–34). After that, Seal avoided General for the remainder of the trade show. (*Id.* at 34).

In May 2019, General came to Florida to participate in a three-day ride-along with Seal, a common practice for regional sales managers to observe account executives at client meetings and to provide feedback and suggestions for improvement. (Doc. 32 at 9; Doc. 33 at 34–35). On the first day, Seal stated that she caught General looking at her cleavage during a client meeting. (Doc. 33 at 35). After the meeting, Seal was assisting General to get his suitcase into her vehicle and commented that he had a large bag for a man, to which General responded, "that's what she said." (*Id.*). Seal also testified that General offered to help her place the bag in her car and pressed himself against her rear end. (*Id.*).

The following day, Seal said that General told her that he had a migraine, but that he always had Excedrin because his wife frequently complained of headaches. (*Id.* at 36). When General came down for dinner, he brought Seal the Excedrin "just in case." (*Id.*).

General again discussed his wife's use of a surrogate and told Seal that "the good thing about [his] wife having a surrogate is everything is still intact down there" and that he guessed it must be for Seal as well since she had not had children and gestured to her genitals. (*Id.* at 37). Seal also testified that General asked if she was a "real blond." (*Id.*). Seal and General then began to discuss Seal's upcoming forum; General stated he needed to know that Seal was fully committed to getting the forum, and when Seal attempted to show him financial reports on her phone, General said the phone was too small and they should go up to his room to review it on his computer. (*Id.* at 39). When Seal declined, General asked several more times if she wanted to accompany him to his room to discuss the details and commented that he thought she was committed to making the forum happen. (*Id.*). However, General testified that the forum had already been approved prior to his ride-along with Seal, and she also testified that she "felt [the forum] was somewhat approved" because it had already been put in her yearly budget. (Doc. 32 at 12–13; Doc. 33 at 39). Seal also testified that discussions regarding scheduling her forum continued after she declined to accompany General to his hotel room. (Doc. 33 at 40). Nevertheless, she felt that when she tried to get General to commit to a date for the forum, he used it as an opportunity to proposition her further. (*Id.* at 40–41).

On the last day of the ride-along, General provided Seal with an evaluation. (Doc. 32 at 15; Doc. 33 at 41). The evaluation was largely positive, but General noted that Seal needed to improve her communication, including responding to his calls and communications. (Doc. 32 at 15; Doc. 33 at 41). Seal then took General to the airport where General grabbed her rear end before leaving. (Doc. 32 at 16; Doc. 33 at 42).

Seal testified that she first made a complaint regarding General's behavior in mid-June after Francine Bean was hired as the Vice President of Human Resources for Revision. (Doc. 28-1 at 60; Doc. 31 at 5; Doc. 33 at 45). During that phone call, Seal states that she told Bean that General was being very condescending and badgering her and she requested to be placed with a new regional sales manager. (Doc. 33 at 45–46). Seal did not make any complaints regarding sexual harassment, inappropriate touching, or inappropriate comments during the call. (*Id.* at 46). Thereafter, Seal stated that she again called Bean toward the end of June and explicitly stated that General was sexually harassing her. (*Id.* at 46–47). Seal also texted Maria Carell, the CEO of Revision, in July and stated that she was having problems with General and would like to be placed with a new manager. (Doc. 31 at 6; Doc. 33 at 46). Again, Seal did not inform Carell that the issues stemmed from sexual harassment. (Doc. 33 at 48).

As a part of his duties and responsibilities, General reviewed each account executive's monthly expense reports. (Doc. 28-1 at 51; Doc. 32 at 19). Beginning in March 2019, General noticed that Seal's expense reports contained bills for excessive hotel costs, that her restaurant expenses contained excessive alcohol and gratuity, and the amount of food ordered did not appear to coincide with the reported number of guests. (Doc. 28-1 at 51; Doc. 32 at 19–20, 26). On April 9, 2019, General e-mailed Tracy Dahms, Revision's Vice President of Sales, regarding his review of the March 2019 expense reports. (Doc. 28-1 at 53–55). In his e-mail, General specifically noted his concerns with Seal's hotel expenditures, as well as the expenses by two other account executives. (Doc. 28-1 at 53–55). Thereafter, on July 9, 2019, General asked Bean to review Seal's expense reports at the direction of Revision's CEO and CFO. (Doc. 28-1 at 51, 60; Doc.

32 at 21). Bean reviewed the reports and felt that there were many discrepancies, so she advised General that Seal should be counseled regarding the use of alcohol for work events, the company's gratuity policy, and to document the name of each person attending a dinner. (Doc. 28-1 at 61, 63; Doc. 31 at 18). However, Bean was unable to determine that there was obvious evidence of falsification on the reports. (Doc. 28-1 at 61, 63).

Subsequent to Bean's review, General spoke with Seal regarding one of her accounts. (Doc. 28-1 at 51–52; Doc. 32 at 23–24). During that conversation, General recommended that Seal should take the doctor and his staff to dinner again, to which Seal responded that the doctor and half of his staff never attended dinners so doing so would not be a good use of resources. (Doc. 28-1 at 51–52; Doc. 32 at 24; Doc. 33 at 48–49). However, General noted that on her June expense report Seal expensed a dinner with that doctor and twelve members of his staff. (Doc. 28-1 at 51–52, 57–58; Doc. 32 at 24). Seal specifically wrote that the doctor and twelve staff members attended on the receipt, and the same notation was later entered into the Concur reporting system that account executives used to submit expense reports. (Doc. 28-1 at 57–58; Doc. 31 at 13). When General asked Seal about the prior expense, Seal stated that listing the doctor as having attended the dinner was a mistake and that he did not attend. (Doc. 28-1 at 52; Doc. 32 at 24–25, 57; Doc. 33 at 48–49). General contacted Bean to inform her of this new information regarding Seal's June expense report, and the two determined that it was sufficient evidence of falsification to warrant termination. (Doc. 28-1 at 52, 61; Doc. 31 at 14, 18; Doc. 32 at 23–24, 57–58). Thereafter, Bean e-mailed Carell regarding her recommendation because an employee termination required the approval of the regional

sales director, human resources, the CEO, and the vice president of sales, with the CEO having the ultimate authority to terminate. (Doc. 28-1 at 61, 65–66; Doc. 31 at 7). Carell stated that she agreed with Bean and General's recommendation. (Doc. 28-1 at 61, 65–66).

General and Bean called Seal on July 31, 2019, and informed her that her employment was being terminated. (Doc. 28-1 at 52, 61; Doc. 32 at 25). During the call, Seal asked to speak with Bean individually. (Doc. 31 at 8; Doc. 32 at 26; Doc. 33 at 49). During the individual call with Bean, Seal raised her concerns regarding General's bullying and condescending behavior and asked if there was anything that could be done to stop the termination. (Doc. 31 at 8–9; Doc. 33 at 49–50). Seal did not specifically raise any claims of sexual harassment during that call. (Doc. 31 at 9; Doc. 33 at 49–50). Seal also texted Carell again shortly after her termination to complain regarding General's "condescending and belittling tone" and his "bully style [management] techniques[,]" but Seal did not mention any form of sexual harassment in her messages. (Doc. 33 at 132–136). Revision investigated Seal's complaints regarding General's management style, which were corroborated by other employees, and shared those results with General. (Doc. 31 at 11–12; Doc. 32 at 18).

General denies that he ever made any of the inappropriate comments to Seal as detailed in this case or had physical contact with her. (Doc. 32 at 7–11, 14–16, 22). Bean denies that Seal ever made a complaint regarding General's behavior prior to her termination and testified that she first learned of the alleged sexual harassment when Seal filed this litigation. (Doc. 28-1 at 61; Doc. 31 at 7–8, 10, 15).

Seal filed a Charge of Discrimination with the Equal Employment Opportunity Commission on November 6, 2019, and subsequently received a Notice of Right to Sue on May 26, 2020. (Doc. 28-1 at 19–21). On August 24, 2020, Seal filed a Complaint (Doc. 1-1) in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida alleging claims against Revision and General for battery, vicarious liability, and sexual harassment and retaliation in violation of the Florida Civil Rights Act ("**FCRA**"), Fla. Stat. § 760.01 *et seq.*, and Title VII of the Civil Rights Act ("**Title VII**"), 42 U.S.C. § 2000e *et seq.* (*Id.* at 4, 9–15). Defendants removed the case to this Court pursuant to 28 U.S.C. § 1331, (*see generally* Doc. 1), and asserted a counterclaim against Seal for conversion, (Doc. 6 at 13–14). Revision now seeks summary judgment on the claims asserted against it.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III.   DISCUSSION

Revision seeks summary judgment as to each count alleged against it in the Complaint. General has not sought summary judgment as to the battery claim against him, and Defendants do not seek summary judgment on their counterclaim.

### A.   Sexual Harassment under Title VII

In Count V, Seal alleges that Revision is liable for sexual harassment under Title VII. "Title VII forbids intentional employment discrimination predicated on any of the protected characteristics of race, color, religion, sex, or national origin." *Chavez v. Credit Nation Auto Sales, LLC*, 641 F. App'x 883, 884 (11th Cir. 2016). "Sexual harassment is a form of sexual discrimination within the meaning of Title VII." *Fleming v. Boeing Co.*, 120 F.3d 242, 244 (11th Cir. 1997). "Two types of sexual harassment are prohibited by Title VII: *quid pro quo* harassment and hostile work environment harassment." *Id.* As an initial matter, Seal argues in her Response that the record in this case supports a quid pro quo claim. However, no such claim was alleged in the Complaint. Instead, Count V alleges

that the sexual "harassment was sufficiently severe and/or pervasive to alter the terms and conditions of . . . S[eal]'s employment." (Doc. 1-1, ¶ 62). Seal did not allege, in Count V or elsewhere, any of the elements of a quid pro quo claim. *See, e.g.*, *Scelta v. Delicatessen Support Servs., Inc.*, 89 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000); *Hazel v. Sch. Bd. of Dade Cnty.*, 7 F. Supp. 2d 1349, 1353 (S.D. Fla. 1998). Therefore, this Court will only consider Seal's claim as to hostile work environment. *Varazo v. Keiser Corp.*, 754 F. App'x 918, 919 (11th Cir. 2018) ("It is well settled that '[a] plaintiff may not amend [her] complaint through argument in a brief opposing summary judgment.'" (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))).

To succeed on a hostile work environment claim under Title VII, an employee must prove that: (1) "she belongs to a protected group"; (2) "that she has been subject to unwelcome harassment"; (3) "that the harassment was based on a protected ground, such as race or sex"; (4) "that the harassment was severe or pervasive enough to alter the terms and conditions of her employment"; and (5) "that her employer is responsible for the harassment under a theory of vicarious or direct liability." *Edgerton v. City of Plantation*, 682 F. App'x 748, 749 (11th Cir. 2017) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Revision argues that Seal has not presented evidence that General's purported actions and statements were sufficiently severe or pervasive to alter the terms or conditions of her employment. "Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010). "Moreover, the plaintiff must prove that the environment was both subjectively and objectively hostile." *Id.* at 809. "Put differently, the employee must first establish that

[s]he 'subjectively perceive[d] the environment to be abusive.' . . . [Sh]e then must satisfy the objective component by showing that h[er] work environment was one 'that a reasonable person would find hostile or abusive.'" *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "[Courts] consider four factors when evaluating whether harassment was objectively hostile: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1285 (11th Cir. 2018) (quotation omitted). The evidence must be "viewed cumulatively, and in its social context" and, in evaluating the evidence, the court must keep in mind that Title VII is not a "general civility code that makes actionable ordinary workplace tribulations." *Reeves*, 594 F.3d at 807; *Mahone v. CSX Transp., Inc.*, 652 F. App'x 820, 823 (11th Cir. 2016) (quotation omitted).

In this case, Seal has testified that between March 2019 and May 2019, General touched her breasts on one occasion, groped her buttocks on one occasion, and pressed his genitals against her on one occasion. Additionally, Seal testified that General made comments regarding her appearance on several occasions, made crude jokes of a sexual nature on multiple occasions, referred to her sex life and her vagina on one occasion, and propositioned her on one occasion. In its Motion, Revision directs this Court to eight cases in support of its argument that this conduct does not rise to the level necessary to support a jury finding in Seal's favor. (Doc. 28 at 14–16). In response, Seal has not offered any case in which a Court has found similar conduct sufficient to submit the claim to the jury.

Having reviewed the relevant case law, considered the conduct in its entirety, and considered the relevant factors, this Court agrees that Seal has not presented sufficient evidence that a reasonable person would view General's conduct as sufficiently severe or pervasive to alter the terms or conditions of her employment. First, Seal has only testified that the comments and touching occurred on three days during the roughly seven months that General acted as her supervisor. While Seal makes much of General's persistent phone calls, she has not testified that he called more than once to twice per day or that the calls generally went beyond standard pleasantries or work-related matters. *See Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 807 (11th Cir. 2012) (holding that "only a few dozen comments or actions . . . spread out over a period of eleven months, that could arguably be construed as harassment" was not sufficiently frequent to support a claim of hostile work environment); *Garriga v. Novo Nordisk Inc.*, 390 F. App'x 952, 953–54 (11th Cir. 2010) (conduct alleged to have occurred on nine days over a period of five months was not sufficient).

Second, the majority of the complained of conduct is a series of ill-conceived sexual innuendos, jokes, and offensive utterances. Although Seal did testify that General quickly touched or brushed against her beasts or buttocks on three occasions, the incidents that she has described simply do not put General's behavior across the line of severity and are not sufficiently threatening or humiliating. *See Guthrie*, 460 F. App'x at 804–05, 807–08 (holding that, along with frequent verbal comments and propositions, a co-worker grabbing the plaintiff's butt on two to five occasions and putting his arm around her once and her supervisor approaching her from behind and kissing her were not sufficient and collecting cases); *Lockett v. Choice Hotels Int'l, Inc.*, 315 F. App'x 862, 863,

866 (11th Cir. 2009) (holding that, after nearly four months of frequent sexual comments and propositions, co-worker attempting to hug the plaintiff and quickly touching her bottom was not sufficient); *Mitchell v. Pope*, 189 F. App'x 911, 913–14 (11th Cir. 2006) (holding that three instances of physical touching, including trying to kiss the plaintiff, lifting her over his head, and rubbing up against her chest, in connection with other offensive comments, was not sufficient); *see also Stancombe v. New Process Steel LP*, 652 F. App'x 729, 734–35 (11th Cir. 2016) (holding that two incidents of physical touching by a coworker including touching the plaintiff's buttocks and thrusting his genitals in the plaintiff's face was physically threatening and humiliating, but it still was insufficient to support a claim because there was no evidence that it was frequent or interfered with the plaintiff's job); *Olson v. Lowe's Home Ctrs. Inc.*, 130 F. App'x 380, 388 (11th Cir. 2005) (distinguishing between forcible physical contact and "mere brushes").

Lastly, Seal has not directed this Court to any evidence or argument that General's conduct interfered with her ability to perform her job, which she continued to perform without incident up to her termination. Accordingly, the Court finds that Revision's Motion is due to be granted as to Seal's hostile work environment claim. *See, e.g.*, *Stancombe*, 652 F. App'x at 734–36; *Jackson v. Ala. Dep't of Corr.*, 643 F. App'x 889, 892 (11th Cir. 2016) (holding that "no reasonable jury could conclude that" the plaintiff's superior "order[ing] her to sit near him after tightening his pants around his crotch, displaying the outline of his genitals" on three or four occasions, "[standing] close enough behind her while she was sitting at the computer that she could feel his breath on the back of her neck" on two occasions, and telling "her she looked good or smelled good" on roughly four occasions over three months was sufficiently severe or pervasive to support a hostile

work environment claim); *Guthrie*, 460 F. App'x 807–08; *Garriga*, 390 F. App'x at 953–54; *Mitchell*, 189 F. App'x at 913–14.

###### B.    Retaliation under Title VII

Seal also alleges that Revision fired her in retaliation for making complaints regarding General's behavior. "Title VII prohibits employers from retaliating against an employee 'because [s]he has opposed any practice made an unlawful employment practice by [Title VII.]'" *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a)). "A Title VII retaliation claim based on circumstantial evidence . . . is ordinarily analyzed under the *McDonnell Douglas* burden-shifting framework." *Id.* (citing *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020)); *see also Butts v. CentiMark Roofing Corp.*, No. 21-12565, 2022 WL 950938, at *3 (11th Cir. Mar. 30, 2022) (applying the *McDonnell Douglas* framework to a retaliation claim). Under the *McDonnell Douglas*[3] framework, "the plaintiff must [first] establish a prima facie case, which raises a presumption that the employer's decision was more likely than not based upon an impermissible factor." *Johnson*, 948 F.3d at 1325 (quotation omitted). "To establish a prima facie case of retaliation, a plaintiff must show: (1) that [s]he engaged in statutorily protected expression; (2) that [s]he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Id.* (quotation omitted). "[O]nce the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision." *Id.* "[I]f the defendant offers a legitimate, nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff to establish that the

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

reason offered by the defendant 'was not the real basis for the decision, but a pretext for discrimination.'" *Id.* (quoting *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 806 (11th Cir. 1995)).

Revision argues that even if Seal can present a prima facie case under *McDonnell Douglas*, it had a legitimate, nondiscriminatory basis to terminate her employment. Specifically, Revision argues that Seal has admitted that she provided false information on her June 2019 expense report, which is a terminable offense. Seal does not dispute that this is sufficient to shift the burden back to her to show that Revision's proffered reason is a pretext for discrimination. "To show pretext, a plaintiff must show that an employer's reasons are false *and* that discrimination was the real reason." *Lewis v. Blue Bird Corp.*, 835 F. App'x 526, 530 (11th Cir. 2020) (quotation omitted). "Thus, to establish pretext at the summary judgment stage, a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (quotation omitted). "Ultimately, the employee must prove that the desire to retaliate was the but-for cause of the challenged employment action." *Lewis*, 835 F. App'x at 530 (quotation omitted).

In her Response, Seal argues that other employees were not terminated for discrepancies on their expense reports, that she was not given an opportunity to discuss the matter with human resources prior to her termination, and that the temporal proximity of her termination to her rejection of General's advances is sufficient to show pretext. However, Seal's arguments merely dispute the wisdom of Revision's decision, which is

not sufficient to overcome a motion for summary judgment. *See Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312–13 (11th Cir. 2018). As an initial matter, Seal does not dispute that the report was false—even if she argues that it was not intentionally false—and she does not direct this Court to any evidence that Revision did not honestly believe that she had made a false report in violation of its policies. As the Eleventh Circuit has stated, "an employer's honest belief based on information that the employee violated its policies can constitute a legitimate reason for termination even if the employer's belief may have been mistaken or wrong." *Lewis*, 835 F. App'x at 530. Here, the record clearly shows that after reviewing Seal's expense reports for several months, reviewing the specific report and receipt at issue in this case, and being informed that Seal had admitted that the individual listed on the receipt and report did not in fact attend the dinner as reported, Bean concluded that Seal had submitted a false report as part of a pattern of questionable expense reports. Seal does not direct this Court to any record evidence that Bean did not sincerely believe that a violation of Revision's policy had occurred. Seal also does not argue that Revision requires a report to be intentionally false to support a termination, as opposed to recklessly false. *See Lowry v. Regis Salons Corp.*, No. 1:05-cv-1970-WSD, 2006 WL 2583224, at *19 (N.D. Ga. Sept. 6, 2006) ("[A] finding that the employee did not, in fact, engage in the determined misconduct—or in misconduct at all—does not itself establish pretext."). Thus, even assuming that Seal did not commit the misconduct she was accused of committing, she has not directed the Court to record evidence that Revision did not honestly believe that she had or that it was offering a phony reason to justify her termination.

Moreover, Seal has not directed this Court to any other Revision employee that engaged in similar conduct and was not terminated or was treated more favorably. In fact, in April 2019, General specifically called the reporting discrepancies of two other employees to the attention of the Vice President of Sales and noted that at least one's actions might necessitate a written warning. (Doc. 28-1 at 54). The fact that General was reviewing and recommending discipline against other employees with respect to their expense reports cuts against any argument that Seal was singled out or treated differently because of her complaints, and Seal has not presented any record evidence to support her conclusory claims. The reporting issues were also first raised before Seal claims that she rebuffed General's advances or complained about his conduct. Next, while providing Seal an opportunity to defend her report might have been a sound employment practice, Seal has not directed this Court to any evidence that she was the only employee denied such an opportunity or that Revision's decision not to provide her an opportunity was pretext for discrimination. *See Simmons v. Bd. of Regents of Univ. Sys. of Ga.*, 523 F. App'x 712, 713 (11th Cir. 2013) (holding that summary judgment was proper where the plaintiff failed to show that his employer did not have a good faith belief that he violated its policies or that the investigation into his conduct was handled differently than any other employee).

Finally, the Eleventh Circuit has held that temporal proximity alone is not sufficient to show pretext. *Gogel*, 967 F.3d at 1137 n.15 ("While close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient." (citations omitted)); *Jackson v. Hennessy Auto*, 190 F. App'x 765, 768 (11th Cir. 2006). Thus, Seal has failed

to direct this Court to any record evidence from which a reasonable jury could find that her complaints regarding General were the but-for cause of her termination. *Lewis*, 835 F. App'x at 530 ("To establish pretext, the plaintiff cannot merely make conclusory allegations and assertions, but must present concrete evidence in the form of specific facts showing that the employer's reason for terminating her was merely pretextual.").

Seal argues, in the alternative, that her claim can proceed under the convincing mosaic of circumstantial evidence test. However, Seal's argument is one sentence, and she fails to cite either record evidence or legal authority in support of her argument. Such conclusory, vague, and unsupported arguments are deemed waived and will not be considered by this Court. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."); *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived).

Finally, Seal argues that Revision is liable under the "cat's paw" theory. "The cat's paw theory provides that discriminatory animus may be imputed to a neutral decision-maker if a supervisor recommends an adverse employment action due to a discriminatory animus and that recommendation is a motivating factor of the decision-maker's ultimate adverse employment action." *Quintero v. Publix Super Mkts., Inc.*, No. 18-cv-21615, 2020 WL 607117, at *2 (S.D. Fla. Feb. 7, 2020). Seal's argument, however, fails for a number of reasons. As an initial matter, even construing her pleading liberally, no such theory of liability is alleged in the Complaint. *See Hammett v. Sec'y, Dep't of Homeland Sec.*, 488

F. App'x 405, 406 (11th Cir. 2012). Next, her argument again fails to direct this Court to any record evidence or legal authority, instead relying on conclusory statements without supporting facts. Moreover, assuming the cat's paw theory were properly before the Court, it goes to the issue of a prima facie case. *See Soulinthong v. TrustPoint Int'l, LLC*, 695 F. App'x 474, 478 (11th Cir. 2017) (stating that the plaintiff "may still be able to establish a prima facie case under the cat's paw theory of liability"); *Hammett*, 488 F. App'x at 407. Thus, it would not help Seal to overcome the lack of evidence of pretext. *Hammett*, 488 F. App'x at 407.

In any event, Seal's argument also fails on the merits. "Under the 'cat's paw' theory, the animus of a non-decision-making employee can be imputed to a neutral decisionmaker, if that decisionmaker did not conduct an independent investigation." *Whitfield v. City of Hallandale Beach*, No. 19-cv-60926-WPD, 2021 WL 4987949, at *2 (S.D. Fla. Sept. 17, 2021) (citing *Roberts v. Randstad N. Am., Inc.*, 231 F. App'x 890, 895 (11th Cir. 2007)). However, the undisputed evidence shows that Bean independently reviewed Seal's expense reports and the false receipt before she—not General—made the initial recommendation that Seal be terminated. There is simply no evidence to suggest that Bean was not a neutral decisionmaker or that she merely "rubber stamp[ed]" a recommendation made by General. *Id.* (quoting *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999)); *see also Crockett v. GEO Grp., Inc.*, 582 F. App'x 793, 797–98 (11th Cir. 2014); *Brooks v. Hyundai Motor Mfg. Ala., LLC*, No. 2:09-CV-384, 2010 WL 3614168, at *10 (M.D. Ala. Sept. 8, 2010). Additionally, contrary to Seal's assertion, the record is undisputed that General first raised concerns regarding her expense reports in April 2019, prior to any report of sexual harassment to Revision or General, negating

Seal's argument that General only began the investigation in retaliation for her complaint. *Reed v. Forney Indus., Inc.*, 800 F. App'x 782, 788 (11th Cir. 2020) ("[U]nder a cat's paw theory of liability, the plaintiff must show that the individual influencing or recommending adverse employment was biased because of discriminatory animus."). Therefore, Seal has not directed this Court to any material issue of fact regarding her retaliation claim and Revision is entitled summary judgment.

### C.    State Law Claims

The remainder of the claims in this case arise under state law. "When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018); *see also Handi-Van Inc. v. Broward Cnty.*, 445 F. App'x 165, 170 (11th Cir. 2011) (holding that the district court did not err in remanding state law claims to state court following dismissal or summary judgment on claims over which it had original jurisdiction). Having determined that summary judgment is proper with respect to Seal's Title VII claims—the claims over which this Court has original jurisdiction—the Court declines to exercise supplemental jurisdiction over the remaining state law claims and will remand them to state court.

## IV.    CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  Defendant Revision, LLC's Motion for Summary Judgment (Doc. 28) is **GRANTED in part** as to Counts V and VI of the Complaint (Doc. 1-1) and **DENIED without prejudice** in all other respects.

2.  The Clerk is directed to enter judgment in favor of Defendant Revision, LLC, and against Plaintiff, as to Counts V and VI of the Complaint, providing that Plaintiff shall take nothing on these claims.

3.  The remainder of this case is **REMANDED** to the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Case No. 2020-CA-8493-O.

4.  The Clerk is directed to transmit a certified copy of this Order to the Clerk of Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. Thereafter, the Clerk shall close this case.

**DONE AND ORDERED** in Orlando, Florida on May 26, 2022.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Clerk of Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida